**UNITED STATES of America**

v.

**2,175.86 ACRES OF LAND, MORE OR LESS, SITUATED IN HARDIN AND JEFFERSON COUNTIES, STATE OF TEXAS, and Kirby Forest Industries, Inc., et al., and Unknown Heirs.**

Civ. A. No. B–78–598–CA.

United States District Court,
E. D. Texas,
Beaumont Division.

July 27, 1981.

Harry W. (Pete) McKee, Asst. U. S. Atty., Beaumont, Tex., for plaintiff.

Joyce Cox and Robin Dawson, Sheinfeld, Maley & Kay, Houston, Tex., for defendant.

## MEMORANDUM OPINION

ROBERT M. PARKER, District Judge.

This is a land condemnation case. According to the Report and Findings filed March 3, 1980, the Land Condemnation Commission found that the "highest and best" use is varied as portions of the land are best used for rural subdivision, waterfront housing and recreational use, timber growing and sand pit operations. The Commission found that the 2,175.86 acres of land subject to condemnation has a value of $2,331,202.00. Objections to the Commission's Report were filed by both the government and Defendant Kirby Forest Industries (K.F.I.). Pursuant to Rule 53(e)(2) and Rule 71A of the Federal Rules of Civil Procedure, the Court held a hearing to consider the Commission's Report and the objections made thereto.

The scope of review is limited. "The Court, after hearing, may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions"; however, "in an action to be tried without a jury, the Court shall accept the master's findings of fact unless clearly erroneous." Fed.R.Civ.P. 53(e)(2) & 71A(h); *United States v. Merz*, 376 U.S. 192, 198, 84 S.Ct. 639, 643, 11 L.Ed.2d 629 (1964); *Livas v. Teledyne Movible Offshore, Inc.*, 607 F.2d 118, 119 (5th Cir. 1979). The findings of the Commission, to the extent that the Court adopts them, shall be considered as the findings of the Court. Fed.R.Civ.P. 52(a) & 71A(h). It is the opinion of the Court that the findings of the Commission are suffi-

cient and are reviewable by the "clearly erroneous" standard prescribed by the Federal Rules of Civil Procedure and in accordance with *United States v. Merz, supra.* Upon review of the Commission's Report and Findings and the objections thereto, the Court finds that the Commission's findings are not clearly erroneous as asserted by the parties, adopts such findings as its own, and overrules the objections of the parties except as to the issue of pre-judgment interest which was not discussed in the Report and Findings of the Land Condemnation Commission.

*CONDEMNATION PROCEEDINGS GENERALLY:*

The government employs two general types of condemnation proceedings: 1) declaration of taking and 2) straight condemnation. Under the Declaration of Taking Act, 40 U.S.C. §§ 258a–258e, a taking occurs and the government obtains title to the land immediately upon filing a declaration of taking and depositing into the court the estimated amount of just compensation. If just compensation, as judicially determined, is found to be greater than the deposit, the statute requires the government to deposit the difference with interest from the date of taking. The deposit of an amount estimated to be just compensation relieves the government of the burden of paying interest on that amount. *United States v. Dow*, 357 U.S. 17, 23, 78 S.Ct. 1039, 1045, 2 L.Ed.2d 1109 (1958).

Should the government proceed with a straight condemnation proceeding, as in the instant case, a complaint in condemnation will be filed pursuant to 40 U.S.C. § 257 and Federal Rule of Civil Procedure 71A. Where that method is utilized, the landowner retains possession and use of the land until after a trial and the payment of the award. Unless a taking has previously occurred, title does not pass and the taking does not occur until the award is paid; consequently, no interest is due upon the award. *Danforth v. United States*, 308 U.S. 271, 284–85, 60 S.Ct. 231, 236, 84 L.Ed. 240 (1939).

*CONTENTIONS OF THE PARTIES:*

Defendant K.F.I. admits that no declaration of taking was filed, however, K.F.I. contends that it is entitled to prejudgment interest because 1) the parties stipulated that the date of taking was March 6, 1979 and, therefore, prejudgment interest should be calculated from that date; and 2) just compensation requires that K.F.I. be compensated for all injury occasioned by the taking. K.F.I. claims that, despite the absence of a declaration of taking, K.F.I. has been deprived of the enjoyment of any benefits of ownership and has borne all the burdens of ownership, including taxation, from the inception of these proceedings until the present. K.F.I. argues that no purchaser would, on or after March 6, 1979, pay value with the prospect only of having to defend a condemnation suit, running its hazards and incurring its costs.

The government responds that, though the Commission's Report and Findings states that March 6, 1979 is stipulated as the date of taking, the Commission considered the terms "date of valuation" and the "date of taking" interchangeable. The government further responds that the United States exercised no control, dominion or possession of the property in question and, in fact, K.F.I. has been and is still in possession of such property. The government reminds the Court of Instruction 19 to the Commission entered on October 3, 1977, stating that the "date of taking" must be and is fixed as of the date the government took possession of the land and denied the landowner its use and benefit. However, the question remains as to whether the government has constructively possessed the land or effectively denied the landowner the use and benefit of the land so as to constitute a taking and to entitle K.F.I. to prejudgment interest.

*PREJUDGMENT INTEREST:*

The Fifth Amendment to the United States Constitution recognizes the authority of the government to appropriate private property for public use; however, it is specified that such property shall not be taken for public use without just compensation.

Due to Public Law 93–439, October 11, 1974, 16 U.S.C.A. § 698, establishing the Big Thicket National Preserve, there is no question but that the land involved in this case is being taken for public use and that just compensation must be awarded to Defendant K.F.I.

"Just compensation" is the fair market value at the time of the taking plus interest from that date to the date of payment. *Albrecht v. United States*, 329 U.S. 599, 67 S.Ct. 606, 91 L.Ed. 532 (1946). To the extent that interest is an element of just compensation, eminent domain cases are an exception to the general rule of nonliability of the sovereign for interest. This award of interest is not mere payment for delay, *Bishop v. United States*, 288 F.2d 525 (5th Cir. 1961); nor is it interest as it is commonly known, but rather a part of the just compensation to which the owner is entitled. *United States v. Thayer West Point Hotel Co.*, 329 U.S. 585, 67 S.Ct. 398, 91 L.Ed. 521 (1947); *Shoshone Tribe v. United States*, 299 U.S. 476, 57 S.Ct. 244, 81 L.Ed. 360 (1937). Thus, in defining just compensation, it is more accurate to say that where the taking precedes the payment of compensation, the owner is entitled to such addition to the value at the time of taking as will produce the full equivalent of such value paid contemporaneously. *United States v. Klamath & Moadoc Tribes of Indians*, 304 U.S. 119, 58 S.Ct. 799, 82 L.Ed. 1219 (1938); *United States v. Playa de Flor Land & Improvement Co.*, 160 F.2d 131 (5th Cir. 1947). *United States v. 5.00 Acres of Land*, 507 F.Supp. 589, 598 (E.D.Tex.1981).

Where private property is appropriated, the right to interest or the fair equivalent attaches automatically to the right to an award of damages. *Miller v. United States*, 620 F.2d 812 (Ct.Cl.1980); *Shoshone Tribe v. United States, supra.* No specific demand to include interest is necessary, nor does an award of interest depend on the existence of a specific statutory provision or a special agreement of the parties. *Seaboard Air Line Ry. Co. v. United States*, 261 U.S. 299, 306, 43 S.Ct. 354, 356, 67 L.Ed. 664 (1923). It is clear from the case law

that where the date of taking of the property precedes the date of payment of the award, the right to interest is directly derived from the Fifth Amendment. *United States v. Alcea Band of Tillamooks*, 341 U.S. 48, 71 S.Ct. 552, 95 L.Ed. 738 (1951); *Bishop v. United States, supra; United States v. 59.29 Acres of Land*, 495 F.Supp. 212, 214 (E.D.Tex.1980).

The purpose of awarding just compensation is to put the owner in as good a position pecuniarily as if the use of the owner's property had not been taken. *Phelps v. United States*, 274 U.S. 341, 344, 47 S.Ct. 611, 612, 71 L.Ed. 1083 (1927). This purpose is procedurally accomplished in a "declaration of taking" proceeding by filing a declaration of taking and depositing into the court the estimated amount of just compensation in accordance with the Declaration of Taking Act, 40 U.S.C. §§ 258a–258e. Such act allows 6% interest on the final award from the date of taking to the date of payment, but no interest on the amount previously deposited into the court. This provision minimizes the interest burden of the government in a condemnation proceeding and alleviates the hardship to the landowner and the occupant from immediate taking. *U. S. v. Miller*, 317 U.S. 369, 381, 63 S.Ct. 276, 283, 87 L.Ed. 336 (1943). However, where, as in the instant case, the government proceeds by "straight" condemnation, no deposit is required, the government's interest burden is not minimized, and the hardship to the land owner is not alleviated.

Though Federal Rule of Civil Procedure 71A governs the procedural aspects of this case, the rule does little to enlighten the Court as to the award of interest. It seems to be well-settled in the case law, however, that interest is generally allowed as part of the damages, or just compensation, to which the owner is entitled when property is taken under the power of eminent domain. *Seaboard Air Line Ry. Co. v. United States, supra.* It seems just as clear from the case law that such interest is computed from the date of taking. *Albrecht v. United States, supra*, 329 U.S. at 602, 67 S.Ct. at

608. However, the date of taking in condemnation suits for the purpose of computing the interest due on the award has been variously determined as (1) the date of filing a declaration of taking; (2) the date of vesting of title; (3) the date of issuance of the summons; (4) the date of filing the oath of appraises; (5) the date of injury to the property; (6) the date of taking actual possession of the property; (7) the date of filing the condemnation commission's report; (8) the date an assessment list was filed; (9) the date a report on damages was filed; (10) the date of making demand for payment; (11) the date of confirmation of the commission's award; and other dates. *United States v. 59.29 Acres of Land, supra,* at 214.

Despite the general rule of federal case law that interest is assessed from the date of taking, the Supreme Court has held that the federal courts should "adopt the local rule if it is a fair one." *Brown v. United States,* 263 U.S. 78, 87, 44 S.Ct. 92, 95, 68 L.Ed. 171 (1923). In *Brown,* the Court applied the local rule of Idaho and assessed interest from the date of the summons. A review of Texas case law reveals diverse results. In *Texarkana & F. S. Ry. Co. v. Brinkman,* 292 S.W. 860 (Tex.Comm'n.App. 1927), interest was computed from the date that the Special Commissioners awarded or estimated the damages. Explaining that *Brinkman* was never adopted by the Texas Supreme Court, the court in *Harris County Flood Control District v. King,* 221 S.W.2d 361 (Tex.Civ.App.—Galveston 1949, writ dism'd), allowed 6% interest from the date that condemnation proceedings were instituted subject to allowing the condemnor the opportunity to prove affirmatively the value of the use of the property to the owner from such date until the condemnor gets actual possession. Though *Brinkman* and *King* have not been overruled, Texas courts have subsequently held that interest begins to accrue on the date of possession of the land by the condemnor. *Trinity River Authority of Texas v. Sealy & Smith Foundation,* 435 S.W.2d 864, 865 (Tex.Civ.App.—Beaumont 1968, writ ref'd); *Housing Authority of the City of Dallas v. Dixon,* 250 S.W.2d 636, 637 (Tex.Civ.App.—Dallas 1952, writ ref. n.r.e.).

In *United States v. 59.29 Acres of Land, supra,* the "taking" question was confronted in a case which also involved land within the "Big Thicket". Despite the "date of taking" stipulation by the parties, the Court held that interest accrued from the date of the filing of the report and findings of the commission. The Court noted that under the ruling of *Gerlach Livestock Co. v. United States,* 76 F.Supp. 87, 97 (Ct.Cl.1948), affirmed, 339 U.S. 725, 70 S.Ct. 955, 94 L.Ed. 1231 (1950), which held that the date of taking of the property "comes whenever the [plaintiff's] intent to take has been definitely asserted and it begins to carry out that intent", the taking may be said to have occurred by the date of the hearing before the condemnation commission. The Court explained:

> . . . by that time the plaintiff has definitely asserted its intent to take the property and has taken all the steps required for the taking [under Fed.R.Civ.Pro. 71A] except for payment of the award. By that date, the plaintiff is no longer able to dismiss the suit at will.

*United States v. 59.29 Acres of Land,* supra, at 215. However, out of "fairness to the Plaintiff," the Court instead set the "date of the beginning of the obligation to pay interest on the award as the date of the filing of the report and findings of the commission, rather than the date of the hearing, since at the earlier date the amount of the award cannot be known by the plaintiff [and] such amount can be known for a certainty only when the commission files its report and findings with the Court."

Although no precise rule determines when property has been taken, the question necessarily requires a weighing of private and public interests. *Agins v. City of Tiburon,* 447 U.S. 255, 260–61, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980); *United States v. 59.29 Acres of Land, supra,* at 214. The Court should keep in mind that the Fifth Amendment's guarantee is designed to bar the government from forcing some people

alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole. *Penn Central Transportation Co. v. New York City,* 438 U.S. 104, 123, 98 S.Ct. 2646, 2658, 57 L.Ed.2d 631 (1978). The constitutional requirement of just compensation derives as much content from the basic equitable principles of fairness as it does from technical concepts of property law. *United States v. Fuller,* 409 U.S. 488, 490, 93 S.Ct. 801, 803, 35 L.Ed.2d 16 (1973); *U. S. v. 59.29 Acres of Land, supra.* It is for this reason that the concept of "inverse" condemnation or "de facto" taking has evolved. Inverse condemnation actions fall into two broad categories: (1) those alleging that particular government-imposed land use regulations are unduly restrictive. *See, e. g., Agins v. City of Tiburon, supra,* and (2) those claiming that certain government activities substantially interfere with the use and enjoyment of property. *See, e. g., Griggs v. Allegheny County,* 369 U.S. 84, 82 S.Ct. 531, 7 L.Ed.2d 585 (1962).

In determining whether a taking has been made out, several factors are considered, including the economic impact of the regulation on the claimant, the extent to which the regulation or government activity has interfered with distinct investment backed expectations, the character of the governmental action and the nature and the extent of the interference with rights in the parcel as a whole. *Pennsylvania Central Transportation Co. v. New York City, supra,* 438 U.S. at 124 & 130, 98 S.Ct. at 2659 & 2662. Although, diminution in property value, standing alone, does not establish a taking, *see Euclid v. Ambler Realty Co.,* 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926); *Hadacheck v. Sebastion,* 239 U.S. 394, 36 S.Ct. 143, 60 L.Ed. 348 (1915), a government regulation effects a taking if the ordinance "does not substantially advance legitimate interests or denies an owner economically viable use of his land." *Agins v. Tiburon, supra,* 447 U.S. at 260, 100 S.Ct. at 2141. Furthermore, if the effects of governmental action are so complete as to deprive the owner of all or most of his interest in the subject matter, a taking has occurred. *United States v. General Motors Corp.,* 323 U.S. 373, 378, 65 S.Ct. 357, 359, 89 L.Ed. 311 (1945); *Richards v. Washington Terminal Co.,* 233 U.S. 546, 34 S.Ct. 654, 58 L.Ed. 1088 (1914). Simply stated, property is legally taken when the condemnor's action directly interferes with or substantially disturbs the owner's use and enjoyment of his property. *Pete v. United States,* 531 F.2d 1018 (Ct.Cl.1976). The Uniform Eminent Domain Code § 1009 states that "the compensation awarded must include an amount sufficient to compensate for loss caused by the restriction or limitation imposed by the court upon the owner's right to use the property."

In *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 414–15, 43 S.Ct. 158, 159–160, 67 L.Ed. 322 (1922), the court found that a statute made it commercially impracticable to mine coal and, thus, had nearly the same effect as the complete destruction of rights the claimant had reserved from the owners of the surface land. In *United States v. Causby,* 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946), government activity resulted in the destruction of the use of property as a commercial chicken farm. Finding that the loss to the owner was "as complete as if the United States had entered upon the surface of the land and taken exclusive possession of it," the Court held that a taking had occurred. *Id.,* at 261, 66 S.Ct. at 1065.

In the instant case, condemnation proceedings instituted by the United States government have effectively denied Defendant K.F.I. economically viable use and enjoyment of its property since it is prevented from continuing its timber business. It is highly doubtful that the government would permit the cutting of even one tree when the purpose of these proceedings is to preserve the land in question for public use as a wilderness park. It is unjust that the government enjoys the interest to which the owner is entitled while the owner is effectively denied the use and enjoyment of his property. Surely this is not the intent of the Fifth Amendment.

In today's inflated economic climate, interest is a realistic expectation of the owner. The Court takes judicial notice that the current legal rate of interest in the state of Texas is six percent (6%) per annum. Tex.Rev.Civ.Stat.Ann. art. 5069–1.03 (Vernon Supp. 1979); *See State of Texas v. Brunson*, 461 S.W.2d 681 (Tex.Civ.App.— Corpus Christi 1970, writ ref. n.r.e.). In addition to the value of the land, found by the Commission to be $2,331,202.00, interest is assessed on such amount at the legal rate of six percent (6%) per annum from the date that condemnation proceedings were instituted.

The Court notes that, had the government instituted proceedings pursuant to the Declaration of Taking Act, 40 U.S.C. §§ 258a–258e, interest would be assessed at the same rate from the date that the declaration of taking was filed. Furthermore, the amount of interest assessed from the date that proceedings were instituted is but a fraction of the amount that the government would have paid had it borrowed money on the money market in order to deposit the estimated amount of just compensation at the date of taking. The amount is also only a fraction of the benefits that the owner could have received had the money been available to him for investment purposes. With these considerations, the result in the instant case appears to be an equitable solution.

The Court recognizes that the amount of the condemnation award is not known with certainty by the plaintiff until the date that the report and findings of the Commission are filed; however, a plaintiff can minimize its interest burden by depositing estimated funds into the registry of the Court at the initiation of condemnation proceedings. In the instant case, the government chose not to take such precautions. The law has little sympathy for those who do not avail themselves of protective insurance, especially when such persons are enjoying the money of others in the meantime. Short and sweet; the government cannot "have its cake and eat it too."